# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FREEDOM OF THE PRESS
FOUNDATION,
49 Flatbush Avenue #1017
Brooklyn, NY 11217

    *Plaintiff*,

v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT
500 12th St., SW
Washington, DC 20024

    *Defendant.*

CIVIL ACTION NO. 25-3883

**COMPLAINT**

## PRELIMINARY STATEMENT

1. Plaintiff Freedom of the Press Foundation ("Plaintiff" or "FPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel United States Immigration and Customs Enforcement ("ICE"), a component of the U.S. Department of Homeland Security ("DHS") to disclose documents requested pursuant to FOIA. Specifically, Plaintiff is seeking documents related to ICE's responsiveness to congressional oversight and restrictions it has imposed on members of Congress seeking to visit ICE facilities.

2. Nearly five calendar months have passed, yet, Defendant has failed to make a determination on Plaintiff's FOIA request or to disclose any of the requested documents within the time stipulated under FOIA or provide any date when such documents will be disclosed.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

4. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

5. This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

6. This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

7. Plaintiff, Freedom of the Press Foundation, is a national non-profit section 501(c)(3) organization incorporated under the laws of California dedicated to press freedom, government accountability, and the public's right to know. FPF regularly submits FOIA requests to gather information to educate the public about matters key to its mission, including government corruption and secrecy. Access to government data is also critical to FPF's mission of promoting the rights of journalists. FPF also regularly publishes a newsletter which details updates and news related to its mission, including stories related to FOIA documents FPF obtains.

8. Among other public interest projects, FPF in 2023 announced the creation of the Daniel Ellsberg chair on government secrecy, a new position focusing on highlighting and fighting the many ways the government keeps secrets – from the press, the public, and congressional overseers. In furtherance of this program, Lauren Harper, FPF's first Daniel Ellsberg Chair on

Government Secrecy, submitted the FOIA request at issue in this matter and has generated original reporting on the subject matter.

9. Defendant ICE is a bureau of the DHS and an agency of the United States under 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, DC.

10. Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of the FOIA. Defendant's refusal to provide Plaintiff with the records requested is a violation of FOIA.

### FACTS

11. Members of Congress are guaranteed the ability to conduct unannounced oversight visits to ICE facilities by section 527 of the Further Consolidated Appropriations Act, 2024. That section states that "[n]one of the funds appropriated or otherwise made available to the Department of Homeland Security by this Act may be used to prevent any [Member of Congress or designated congressional employee] from entering, for the purpose of conducting oversight, any facility operated by or for the Department of Homeland Security used to detain or otherwise house aliens, or to make any temporary modification at any such facility that in any way alters what is observed by a visiting member of Congress or such designated employee, compared to what would be observed in the absence of such modification." It further provides that it may not "be construed to require a Member of Congress to provide prior notice of the intent to enter a facility."[1]

---

[1] This provision was extended by section 1104 of the Full-Year Continuing Appropriations and Extensions Act, 2025, which prohibits the "initiat[ion] or resum[ption of] any project or activity for which appropriations, funds, or other authority were specifically prohibited during 2024." Pub. L. No. 119-4, 139 STAT. 12.

12. On or around June 16, 2025, the Department of Homeland Security issued updated guidance regarding congressional visitation of ICE facilities on its website stating that its Field Offices did not fall under section 527 and requiring prior notice before visitation. The guidance was deleted from the agency's website later that week, as reported by FPF on June 26, 2025.[2]

13. ICE has, at all times relevant to this complaint, instructed Members of Congress and their staff to route all correspondence relating to ICE oversight to the email address CongresstoICE@ice.dhs.gov.

14. On June 19, 2025, FPF requested information from ICE via FOIA. Specifically, FPF requested *"Copies of all emails sent to or received by CongresstoICE@ice.dhs.gov since June 1, 2025."* Within that request, FPF specified that FPF is a news media organization and FPF asked for expedited processing under 5. U.S.C. § 552(a)(6)(E).

15. On June 25, 2025, ICE responded to FPF by email indicating the agency had received FPF's FOIA request and had assigned it the case number **2025-ICFO-43938**. ICE stated that it was denying FPF's request for expedited processing and that it had "queried the appropriate program offices within ICE for responsive records." The agency did not comment on FPF's status as a news media requester.

16. Public interest in congressional oversight visits to ICE's facilities further increased following the submission of FPF's FOIA request.

17. Also on June 25, 2025, Rep. Frederica Wilson, along with 31 cosponsors, introduced H. Res. 546 – titled "Encouraging Members of Congress to visit ICE detention facilities in their States." This resolution's findings emphasized the principle that "nothing may be construed to

---

[2] Lauren Harper, *Did ICE quietly rescind illegal guidance curtailing congressional visits?*, THE CLASSIFIEDS (June 26, 2025), https://freedom.press/the-classifieds/did-ice-quietly-rescind-illegal-guidance-curtailing-congressional-visits/.

require a Member of Congress to provide prior notice of the intent to enter a facility for the purpose of conducting oversight," and the importance of unannounced visits "to ensure that Department of Homeland Security employees and contractors do not alter the facilities before Members of Congress visit."

18. On July 20, 2025, Congressman Jason Crow and staff arrived at the Denver Contract Detention Facility located in Aurora, Colorado to conduct a routine, unannounced oversight visit of the facility. A report prepared by Rep. Crow's office explained that they were denied entry to the facility, and that they have been denied "electronic files and written updates relevant to the completion of accountability reports detailing conditions at this facility."[3] The report also included the following passage from ICE's denial of their oversight request:

> "When planning to visit an ICE detention facility, DHS requires requests be made a minimum of seven calendar days in advance for scheduling. Any requests to shorten that time must be approved by the DHS Secretary. Visit requests should be submitted during normal business hours to ICE's Office of Congressional Relations (OCR) at CongressToICE@ice.dhs.gov. Visit requests are not considered actionable until receipt of the request is acknowledged by OCR to the requestor. Requests received after hours or on weekends/holidays will be confirmed on the next business day. OCR will work with the appropriate ICE Field Office to coordinate the visit request and will confirm details as soon as practicable."

19. On July 28, 2025, six Members of Maryland's congressional delegation were turned away from an ICE facility they visited in Baltimore, MD. They were denied entry, even though they wrote

---

[3] Melissa Lewis, ICE Aurora Contract Detention Facility Accountability Report (July 20, 2025), *available at* https://crow.house.gov/sites/evo-subsites/crow.house.gov/files/evo-media-document/7.20.2025-ice-accountability-report.pdf.

the head of ICE and Secretary of Homeland Security Kristi Noem seven days earlier to alert them to the visit.4

20. On July 30, twelve Members of Congress sued ICE, DHS, Acting ICE Director Todd Lyons, and Secretary Noem, all in their official capacities, for denial of their access to ICE facilities for oversight. They allege that ICE's policy purporting to require advance notice of oversight visitations is unlawful.5

21. The congressional litigation and ICE's continued refusal to submit to unannounced in-person oversight visits has drawn further media coverage and public interest. On August 25, 2025, the Texas Observer, reporting on the litigation, documented the further stymying of congressional oversight, reporting:

> On August 15, 2025, Rep. Greg Cesar attempted to access the Don T. Hutto Detention Center in Taylor, TX, which is operated by DHS contractor CoreCivic, after receiving complaints that the air conditioning was not functioning properly and that detainees were "boiling." The congressman, along with Austin-based attorney Andrea Jarero, who was trying to visit a client, were both denied access by CoreCivic. When journalists, activists, Casar and his staff arrived at the detention facility, CoreCivic employees had blocked off access to the building's parking lot with traffic cones and two white vans. A CoreCivic employee exited his vehicle and told Casar he'd need to schedule any visits at least seven days in advance. "This advance notice is necessary to ensure proper scheduling and to avoid any intrusion on the President's Article II authority to oversee executive department functions," the employee said, reading from a piece of paper.

---

4 *See* William J. Ford, *Maryland delegation denied access to inspect Baltimore ICE facility*, MARYLAND MATTERS (July 29, 2025), https://marylandmatters.org/2025/07/29/maryland-delegation-denied-access-to-inspect-baltimore-ice-facility/.

5 Compl. ¶¶ 8-9, *Joe Neguse, et al. v. ICE, et al.*, D.D.C. Case No. 1:25-cv-02463, Doc. 1 (July 30, 2025).

The report also included a picture of the paper read to Rep. Cesar, referencing the CongresstoICE@ice.dhs.gov email address which is the subject of FPF's request:



Francesca D'Annunzio, *Dems in Congress Are Being Denied Access to ICE Facilities. Now They're Suing.*, TEXAS OBSERVER (Aug. 25, 2025), https://www.texasobserver.org/dems-congress-ice-detention-oversight-lawsuit/.

22. On October 27, 2025, Politico reported that ICE began refusing congressional oversight requests on the grounds that ICE no longer has the staff necessary to facilitate those visits.

According to Politico, DHS "acknowledged the shutdown's impact on lawmaker visits and said the lawmakers themselves were to blame." Assistant DHS Secretary Tricia McLaughlin stated "While the Democrats may not care about shutting down the government and making millions of public servants go without a paycheck, **maybe they will get back to work now that they have lost the precious appropriations rider they rely on to try to storm ICE facilities**." (emphasis added).[6]

23. On October 29, 2025, Politico reported that ICE had furloughed its staff assigned to responding to congressional inquiries, prompting a letter from fifteen Members of Congress to Acting Director Lyons complaining that "ICE continues to conduct raids, make arrests, deny bonds, and execute removal orders, but the staff who would answer inquiries from congressional offices about the location and safety of the individuals in ICE custody are furloughed. This is unacceptable."[7]

24. On November 3, 2025, FPF inquired what the status of its request was and requested an estimated date of completion from the ICE FOIA office, receiving an automated response that they would not be answering emails or telephone calls until the "conclusion of the funding hiatus."

25. To date, Plaintiff's FOIA request to ICE has produced no documents and ICE has not provided any indication about when any responsive documents may be produced.

---

[6] Kyle Cheney & Myah Ward, *Another shutdown consequence: Democrats can't visit ICE detention facilities*, POLITICO (Oct. 27, 2025), https://www.politico.com/news/2025/10/27/immigration-congressional-visits-ice-government-shutdown-00624066.

[7] Eric Bazail-Eimil, *ICE quietly furloughed its congressional relations team during shutdown*, POLITICO (Oct. 29, 2025), https://www.politico.com/live-updates/2025/10/29/congress/ice-quietly-furloughed-its-congressional-relations-team-during-shutdown-00627355.

## COUNT I:

### *Violation of Statutory Deadline*

26. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

27. FOIA requires agencies to determine within 20 working days after the receipt of any FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

28. Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). These circumstances must be included in a "written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id*. ICE has not claimed that any such unusual circumstances exist.

29. Twenty working days from June 19, 2025, (the date FPF submitted its FOIA request) was July 21, 2025.[8] As of the date of this filing, Plaintiff has received no documents in response to its FOIA request.

30. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its June 19, 2025, FOIA request, FPF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

## COUNT II:

### *Unlawful Withholding of Agency Records*

31. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

32. Defendant ICE has failed to search for records responsive to Plaintiff's FOIA Request.

---

[8] Excluding 5 weekends, July 4, and Juneteenth.

33. Defendant's failure to make a determination on or disclose the documents requested in Plaintiff's June 19, 2025, FOIA request within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

34. Defendant's conduct amounts to a denial of Plaintiff's FOIA request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public regarding ICE's resistance to congressional oversight.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

i. Enter an order declaring that Defendant wrongfully withheld requested agency documents;

ii. Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld documents;

iii. Maintain jurisdiction over this action until Defendant is in compliance with the FOIA, the Administrative Procedure Act, and every order of this Court;

iv. Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

v. Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on November 6, 2025

s/ *Kevin H. Bell*_____
Kevin H. Bell
DC Bar # 90015600
kevin@freeinformationgroup.com

Ginger Quintero-McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

Free Information Group, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642
*Attorneys for Plaintiff*